**ALLEN, Appellant,**

v.

**MIAMI COUNTY BOARD OF ZONING APPEALS, Appellee.**

[Cite as *Allen v. Cty. Bd. of Zoning Appeals*, 186 Ohio App.3d 196, 2010-Ohio-377].

Court of Appeals of Ohio,
Second District, Miami County.

No. 2009 CA 34.

Decided Feb. 5, 2010.

</div>

John C. Chambers, Richard A. Talda, and Sasha Alexa M. VanDeGrift, for appellant.

Gary Nasal, Miami County Prosecuting Attorney, and James R. Dicks Jr., Assistant Prosecuting Attorney, for appellee.

DONOVAN, Presiding Judge.

{¶ 1} Plaintiff-appellant, Josette M. Allen, appeals a judgment of the Miami County Court of Common Pleas that affirmed the decision issued by defendant-appellee, the Miami County Board of Zoning Appeals ("BZA"), in which the BZA

denied appellant residential-zoning permits for three lots of real property that she owns in Miami County.

I

{¶ 2} The relevant history of the property at issue began in 1995 when appellant hired M.L. Oxner, a registered professional surveyor, to survey a 185–acre tract of land in an unincorporated area of Miami County. Pursuant to the survey that Oxner performed, appellant recorded a survey plat with the Miami County Record of Land Surveys, which divided the property into 16 individual lots.

{¶ 3} On January 5, 1996, David Allen, appellant's husband, recorded a deed in the Miami County Recorder's Office in which he transferred the 16 lots to appellant in order to make them "Lots of Record." The first deed was approved by the Miami County Health Department, the County Engineer, and the County Auditor. Each of the 16 lots was in excess of ten acres and possessed at least 125 feet of road frontage along Horseshoe Bend Road in Miami County. On the same day she recorded the first deed, appellant made a second transfer of all 16 lots of record, this time to herself, as trustee.

{¶ 4} In late 2006, appellant began construction of a bridge and paved roadway that connected all 16 lots of record to Horse Shoe Bend Road.[1] Construction was completed in 2007. Appellant applied for and was granted all of the requisite permits from Miami County in order to construct the bridge and roadway that connected all the properties. We note that since 1996, appellant has paid semi-annual taxes on each of the 16 lots. Additionally, the record establishes that appellant paid taxes on each property at the residential tax rate in Miami County.

{¶ 5} In 2008, appellant hired Banah Development, L.L.C., to construct homes on three of the 16 lots, specifically lot No. 4, a 12.388–acre tract at 6828 Horseshoe Bend Road; lot No. 11, a 10.264–acre tract at 6756 Horseshoe Bend Road; and lot No. 14, a 10.309–acre tract at 6544 Horseshoe Bend Road. Kirk Schlecty, owner of Banah Development, testified that he met with representatives of the Miami County Zoning Department on numerous occasions regarding construction on the various lots. Schlecty testified that he provided all the necessary Health Department permits and driveway permits to the zoning department. Schlecty further testified that the zoning department informed him that it required no additional permits or other materials in regard to the lots.

---

1. In 2006, Allen transferred one of the 16 properties to an attorney she employed in New York. Shortly thereafter, the attorney transferred the property back to Allen. Allen stated that the transfer of the property was a "test" to see if the Miami County Planning Commission would object to the transfer, since Allen had not applied for status as a subdivision at any point during her ownership or development of the entire property.

{¶ 6} Scott Dixon, another representative of appellant, testified that he spoke with Jacob Hoover, Miami County Planning Director, in regard to the grant of zoning permits to construct homes on the three lots. Dixon testified that he specifically asked Hoover at a meeting on December 11, 2008 (David Allen and Schlecty were also present) whether there would be any obstacles that would prevent the issuance of the zoning permits, once the driveway permits were obtained. Dixon testified that Hoover stated that with the exception of a change in state law, there were no existing impediments to the issuance of the zoning permits.

{¶ 7} On December 29, 2008, however, Hoover sent a letter to appellant in which he indicated that the zoning department had denied the requests for zoning permits. The reason provided as the basis for the denial of the zoning permits was that appellant had failed to register the 16 lots of record as a subdivision as required by Ohio law. Hoover further stated that until appellant's apparent "subdivision" had been approved by the Miami County Planning Commission, the zoning department would not review appellant's application for zoning permits.

{¶ 8} Appellant appealed the denial of the zoning permits to the BZA. After a hearing held on February 19, 2008, the BZA affirmed Hoover's decision to deny the zoning permits. Appellant subsequently appealed the decision of the BZA to the Miami County Court of Common Pleas. In a judgment entry filed on July 27, 2009, the trial court affirmed the decision of the BZA denying the issuance of the zoning permits. Appellant filed a timely notice of appeal from the decision of the trial court on September 4, 2009.

## II

{¶ 9} Appellant's first assignment of error is as follows:

{¶ 10} "The trial court erred by upholding the BZA's decision because the zoning department lacked authority to deny zoning permits based on subdivision regulations."

{¶ 11} In her first assignment, appellant contends that the trial court erred when it affirmed the BZA's decision because the zoning department did not have the statutory authority to deny the zoning permits based on an alleged violation of the subdivision regulations. Appellant argues that she had complied with every applicable zoning regulation in order to obtain the appropriate zoning permits. Appellant asserts that the question of whether the properties in question qualify as a subdivision should be left to the planning commission, whose job it is to enforce the subdivision regulations, not the zoning department, whose job it is to enforce the zoning regulations.

{¶ 12} In its merit brief, the BZA concedes that "neither the Miami County Zoning Resolution nor the [Ohio] Revised Code grants the BZA, the Planning Director or the Zoning Inspector the authority to enforce the Miami County Subdivision Resolution." The BZA, however, argues that when Hoover denied appellant the zoning permits, he was not trying to enforce the subdivision regulations. Rather, the BZA asserts that Hoover was merely enforcing zoning resolution Section 20.02(H), which states:

{¶ 13} "The Planning Director or authorized representative shall stamp 'approved' upon acceptance of the site plan for review, may waive certain requirements where information is deemed unnecessary *and may require additional information not made referenced herein which may be necessary for proper review.*" (Emphasis added.)

{¶ 14} The BZA interprets this section of the zoning regulations to allow the planning director to refuse to issue a zoning permit when an applicant has failed to provide evidence of compliance with other land-use regulations. Specifically, the BZA argues that pursuant to Section 20.02(H) of the zoning regulations, Hoover possessed the authority to deny zoning permits based on appellant's failure to comply with the subdivision regulations.

{¶ 15} As we stated in *BP Oil Co. v. Dayton Bd. of Zoning Appeals* (1996), 109 Ohio App.3d 423, 432, 672 N.E.2d 256:

{¶ 16} "Ohio law is clear that in interpreting a zoning ordinance courts must strictly construe restrictions on the use of real property in favor of the property owner. *Liberty Sav. Bank v. Kettering* (1995), 101 Ohio App.3d 446, 655 N.E.2d 1322; *Rotellini v. W. Carrollton Bd. of Zoning Appeals* (1989), 64 Ohio App.3d 17, 580 N.E.2d 500; *State ex rel. Moore Oil Co. v. Dauben* (1919), 99 Ohio St. 406, 124 N.E. 232; *Whiteco Metrocom, Inc. v. Columbus* (1994), 94 Ohio App.3d 185, 640 N.E.2d 563.

{¶ 17} " 'All zoning decisions, whether on an administrative or judicial level, should be based on the following elementary principles which underlie real property law. Zoning restrictions are in derogation of common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. Restrictions on the use of real property by the ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed.' (Citations omitted.) *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 246, 421 N.E.2d 152, 154. Ambiguities in zoning provisions which restrict the use of one's land must be construed against the zoning resolution because the enforcement of such a provision is an exercise [of] police power that

constricts property rights. *Freedom Twp. Bd. of Zoning Appeals v. Portage Cty. Bd. of Mental Retardation & Developmental Disabilities* (1984), 16 Ohio App.3d 387, 390, 16 OBR 456, 458–459, 476 N.E.2d 360, 363–364, [motion to certify record overruled]. Furthermore, the BZA's authority to regulate uses of land cannot be extended to include the authority to restrict uses not clearly proscribed in the ordinance. *Dauben.*" Since Section 20.02(H) of the zoning resolutions purports to allow the planning director to place restrictions on the use of appellant's land, we are required to strictly interpret that section in favor of appellant.

{¶ 18} After a thorough review of the record, we find that the zoning department did not have the authority to deny appellant's zoning permits based on an alleged violation of the subdivision regulations. In order for the zoning department to issue a zoning permit, an applicant must establish that the building he or she wants to erect complies with the following requirements in the district in which the property is located: (1) it must be for a purpose permitted in the district, (2) it must conform to height or bulk limits established in the district, (3) it must conform with the yard or lot requirements in the district, (4) it must conform with all off-street parking and loading-space regulations in the district, and (5) there must not be more than one main building on the lot, unless otherwise provided for in the zoning regulations. Miami County Zoning Res. Article 18.01(A) through (E). The zoning resolution also contains a provision that sets forth the requirements for areas zoned for residential use. Miami County Zoning Res. Article 5. There is no provision in either Article 5 or 18, or any other section of the zoning resolution, which permits the zoning department to deny an application for a zoning permit based upon a failure to comply with the subdivision regulations. Strictly construed in favor of appellant, Section 20.02(H), likewise, does not authorize the zoning department to deny a zoning permit for alleged noncompliance with the subdivision regulations.

{¶ 19} Additionally, the subdivision regulations contain no provision that allows for the denial of a zoning permit for failure to comply with the subdivision regulations. In the event of a violation, Article 8 of the subdivision regulations outlines the penalties that may be imposed. The penalties include monetary fines, as well as the institution of legal proceedings to have the property plat stricken from the record or petition for an injunction to enjoin further development on the property. The subdivision regulations also state that the body that determines whether a violation has occurred and implements penalties is the planning commission, not the zoning department. Thus, the zoning department had no authority to deny appellant's zoning permits for alleged noncompliance with the subdivision regulations. The authority to enforce the subdivision regulations, as well as impose penalties for noncompliance with the regulations,

rests solely with the Miami County Planning Commission.[2] Thus, the trial court erred when it upheld the BZA's decision to deny appellant's zoning permits for failing to comply with the subdivision regulations.

{¶ 20} We also note that because Hoover declined to issue appellant's zoning permits in light of her noncompliance with the subdivision regulations, no decision was reached regarding whether appellant complied with the express requirements of the zoning resolution for the building of single-family residences on the properties in question. For clarification's sake, this opinion should in no way be interpreted as a directive to the Miami County Zoning Department to grant appellant's zoning permits. The zoning department, however, should be mindful to limit its consideration of the zoning permits to issues explicitly within its mandate as set forth in the zoning resolutions.

{¶ 21} Appellant's first assignment of error is sustained.

### III

{¶ 22} Appellant's second and third assignments of error are as follows:

{¶ 23} "The trial court erred in affirming the BZA's decision because the BZA's decision was not based on substantial, reliable, and probative evidence.

{¶ 24} "The trial court erred by affirming the appellee BZA's decision because that decision, if upheld, would lead to a denial of due process."

{¶ 25} In light of our disposition with respect to appellant's first assignment of error, the second and third assignments are rendered moot and need not be addressed.

### IV

{¶ 26} Appellant's first assignment of error having been sustained, the judgment of the trial court is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN and FROELICH, JJ., concur.

_____

2. The question whether appellant violated the Miami County Subdivision Regulations is not before us; only the question whether the zoning department had the authority to deny a zoning permit for failure to comply with subdivision regulations is before us.