[Cite as *Southtown Furniture v. Miami Twp. Bd. of Zoning Appeals*, 2012-Ohio-6052.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

SOUTHTOWN FURNITURE, et al. :

                             :        Appellate Case No. 25240

      Plaintiff-Appellants     :

                             :        Trial Court Case No. 2010-CV-8664

v.                             :

                             :

MIAMI TOWNSHIP BOARD OF     :        (Civil Appeal from
ZONING APPEALS, et al.          :        Common Pleas Court)

                             :

      Defendant-Appellees     :

                             :

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of December, 2012.

. . . . . . . . . . .

TIMOTHY JEFFRIES, Atty. Reg. #0072435, 437 Market Avenue North, Canton, Ohio 44702
      Attorney for Plaintiff-Appellants

ROBERT J. SURDYK, Atty. Reg. #0006205, Surdyk, Dowd & Turner, Co., L.P.A., 1 Prestige
Place, Suite 700, Miamisburg, Ohio 45342
      Defendant-Appellant-Appellees

. . . . . . . . . . . .

HALL, J.

    **{¶ 1}**    Southtown Furniture ("Southtown") appeals from the trial court's decision,

order, and entry affirming an administrative decision denying its request to replace face panels

on a non-conforming roof sign atop its business.[1]

{¶ 2} Southtown advances two assignments of error on appeal. First, it contends the trial court erred in determining that its removal of the old panels constituted removal of the roof sign. Second, it claims the trial court erred in determining that it was required to seek administrative approval to repair the roof sign.

{¶ 3} The record reflects that Southtown operates a business in Miami Township. In 1974, a commercial sign was erected on the roof of its building. At that time, roof signs were permitted. Sometime after the sign was erected, Miami Township prohibited roof signs. The sign atop Southtown's building was permitted to remain, however, as a legal non-conforming use.

{¶ 4} In the summer of 2010, the three-sided roof sign on Southtown's building needed to be repaired. While performing the work, the contractor, Archer Signs, removed the three panels but left the support structure in place. After removal of the panels, but before new panels were installed, a township zoning inspector noticed the work being done. He advised Southtown that removal of the panels constituted removal of the sign. Because the sign allegedly had been removed, the inspector advised Southtown that the current zoning resolution did not allow it to be replaced. At the Board of Zoning Appeals (BZA) hearing, contractor Jerry Archer testified that by the time he received word not to replace the panels, he had almost completed the job, which took only three days. As a result, he decided to "just put

---

[1] According to the notice of appeal, the appellants are Southtown Furniture, The Bon-Ton Stores, Inc., and Archer Corporation. For purposes of clarity and convenience, we will refer to them collectively as "Southtown." The appellees in this action are the Miami Township Board of Zoning Appeals, the Miami Township Zoning Inspector, and the Miami Township Board of Trustees. We will refer to the appellees collectively as "Miami Township."

the last couple panels up so everything's secure."

{¶ 5}     After the new panels were installed, the zoning inspector informed Southtown that the roof sign had to be removed because it had lost its legal non-conforming use status. The inspector gave Southtown the option of appealing his determination to the BZA or applying to the BZA for substitution of a non-conforming use. Southtown elected to file the application, requesting permission to replace the panels on the existing support structure without changing the square footage.

{¶ 6}     Southtown's application proceeded to a BZA hearing. In addition to taking testimony, the BZA considered a staff report that recommended denial of the application. The staff report opined that Southtown had removed its non-conforming roof sign when it removed the face panels. The report then cited a zoning resolution providing that when a non-conforming sign is replaced it must meet current zoning requirements. The report advised the BZA: "What we can do is require property owners to comply with the code when they erect a new sign or remove a non-conforming sign. In this case, the applicant's removal of the sign requires us to have the applicant meet our current code."

{¶ 7}     Ultimately, the BZA voted to deny Southtown's application. It reasoned that "[t]he substitution requested is not a valid request due to the fact that the sign was removed prior to the application, and therefore is not a substitution[.]" Southtown appealed this determination to the trial court. It challenged the BZA's finding that "the sign was removed." Southtown argued that removal of three face panels did not constitute removal of "the sign" and, therefore, that the legal non-conforming use status had not been lost. The trial court rejected this argument. In affirming the BZA's ruling, it explained:

The court finds that Appellants' removal the old roof sign panels and replacement with the new roof sign panels, without authorization by way of a zoning certificate or permit, rendered the roof sign out of compliance with the Resolution and brought the sign within the prohibited roof sign provision. Appellants argue that the sign was not removed since the sign's supporting structure remained in place, and, therefore, the roof sign did not lose its legal nonconforming use status, as it remained intact. However, there is no authority to support Appellants' contention that removal of the sign panels did not constitute removal of the sign, even if the bare supporting structure was in place. Moreover, even if the Board had found that the sign was not removed, the court finds that Appellants still failed to seek substitution of the nonconforming use before replacing the sign, as required under the Resolution. Furthermore, the Board was under no absolute obligation to approve Appellants' substitution request. Having reviewed the entire record, the court cannot say that the Board's decision was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.

(Doc. #23 at 7-8).

**{¶ 8}** We begin our analysis with the applicable standard of review. "[I]n an administrative appeal pursuant to R.C. Chapter 2506, the common pleas court considers the whole record, including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious,

unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." (Citations omitted.). *Durell v. Spring Valley Twp. Bd. of Zoning Appeals*, 2d Dist. Greene No. 2012 CA 23, 2012-Ohio-5098, ¶21. An appellate court's review is more limited. Under R.C. 2506.04, an appellate court reviews a common pleas court's judgment only on "questions of law." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). This includes reviewing the trial court's application of law to undisputed facts. *Id.* at 148. It also includes reviewing the trial court's decision to determine whether, as a matter of law, the decision is unsupported "by a preponderance of reliable, probative and substantial evidence," *Kisil v. City of Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984), or whether the decision constitutes an abuse of discretion. *Henley* at 148. With these standards in mind, we turn to Southtown's arguments.

{¶ 9}    In its first assignment of error, Southtown contends the trial court erred in finding that removal of its sign's panels constituted removal of the roof sign, thereby terminating the legal non-conforming use.[2] Southtown reasons, as argued in the trial court,

---

[2] We recognize that this is not, strictly speaking, the same issue as the one decided by the BZA from which Southtown appealed to the trial court. As noted above, a zoning inspector informed Southtown that removal of the face panels constituted removal of the roof sign. The inspector advised Southtown that current zoning resolutions did not allow the roof sign to be replaced. The inspector gave Southtown the option of appealing this determination or applying to the BZA for substitution of a non-conforming use. Southtown chose the latter route and filed an application. Whether the zoning inspector (and the trial court) erred in finding that Southtown had removed its roof sign presents a somewhat different question than whether the BZA erred in denying Southtown's application for substitution of a non-conforming use. We note, however, that the BZA did hear testimony about (1) whether Southtown's removal of the sign's face panels constituted removal of the sign and (2) whether Southtown was entitled to substitution of a non-conforming use. Notably, the BZA's ruling also included an express finding that Southtown's "sign was removed[.]" In its ruling, the trial court likewise considered and decided both issues. The parties too have briefed both issues on appeal. Therefore, we believe the dispute over whether Southtown's removal of the face panels constituted removal of the roof sign is properly before us. Southtown's failure to formally appeal to the BZA from the zoning inspector's resolution of that issue could have constituted, at most, a failure to exhaust administrative remedies, which is not a jurisdictional defect. *Lamar Outdoor Advertising v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 18902, 2002-Ohio-3159, *3. Rather, it is an affirmative defense that

that the support structure was part of the roof sign. Because that structure remained in place, Southtown argues that the roof sign was not removed, the non-conforming use continued, and replacement of the panels should have been allowed. In response, Miami Township argues that the applicable zoning resolution unambiguously precluded the roof-top support structure from being considered part of the sign. As set forth above, the trial court agreed with Miami Township, finding "no authority" to support Southtown's position.

{¶ 10}   The outcome of the parties' dispute is governed by Miami Township Zoning Resolution ("MTZR") §4101.03, which provides:

> C.    Any legal nonconforming sign, which is structurally altered, relocated, displaced by natural or artificial causes, or replaced shall comply with all provisions of this Resolution.
>
> D.    For purposes of this section, any free standing support structure shall not be included as part of the sign.

{¶ 11}   Unfortunately, the zoning resolution does not define the phrase "free standing support structure." Under the cannon of interpretation *expressio unius est exclusio alterius*, however, the implication of MTZR §4101.03(D) is that a *non*-free standing support structure *shall* be included as part of the sign. Although the Miami Township's zoning resolution does not define a "free standing support structure," it does define a "free-standing sign." Under MTZR §4102.02, a "free-standing sign" is "[a] sign suspended or supported by one or more

---

is waived if not timely asserted. *Dworning v. Euclid*, 119 Ohio St.3d 83, 2008-Ohio-3318, 892 N.E.2d 420, ¶9-11. In the trial court, Miami Township never raised failure to exhaust administrative remedies. Moreover, in *Lamar Outdoor Advertising*, *supra*, this court found that an owner's failure to appeal a zoning inspector's notice that a repaired billboard no longer qualified as a non-conforming use did not preclude further review of the issue where the owner followed the inspector's recommended alternative course of applying for a certificate of appropriateness. *Lamar Outdoor Advertising*, at *4. The circumstances here are similar.

uprights or braces and * * * permanently affixed to the ground surface." Southtown reasons by analogy that a "free standing support structure" logically must be a support structure permanently affixed to the ground surface. Because the support structure for its roof sign is affixed to the roof, Southtown maintains that the structure is not "free standing." Therefore, it contends the structure should be included as part of the roof sign.

{¶ 12} Southtown's reasoning has some appeal, and another portion of the zoning resolution supports it. Specifically, MTZR §219.10 defines a "structure" as "[a]nything constructed, except pavement, the use of which requires permanent location on the ground, or attachment to something having a permanent location on the ground." Miami Township contends MTZR §219.10 reveals the fallacy of Southtown's argument because the support structure at issue is attached to a roof, which, in turn, is permanently affixed to the ground. Miami Township reasons that, based on the plain language of MTZR §219.10 "a 'support structure' is not required to be attached to the ground in order to constitute a 'free standing support structure[.]'" (Appellee's brief at 5). We disagree. When read in conjunction with MTZR §4101.03, MTZR §219.10 actually supports the opposite conclusion.

{¶ 13} Section 219.10 identifies two subsets of structures within the entire universe of "structures": (1) those affixed to the ground and (2) those attached to something else that is affixed to the ground. In turn, MTZR §4101.03(D) contemplates structures being either "free standing" or, by necessary implication, "non-free standing." Under MTZR §219.10, the support structure on Southtown's roof falls under the second subset identified above—it is attached to something else, the roof of a building, that is affixed to the ground. Contrary to Miami Township's argument, however, that determination says nothing about whether the

roof-top structure is "free standing" or "non-free standing."

{¶ 14} Having considered the two subsets of "structures" identified in MTZR §219.10, we believe the most reasonable interpretation is that structures affixed to the ground are "free standing" under MTZR §4101.03(D), whereas structures attached to something else that is affixed to the ground are "non-free standing." This interpretation is consistent with the common-usage meaning of "free standing," which has been defined as "unattached to a supporting unit or background; standing alone." *See* Dictionary.com, http://dictionary.reference.com/browse/freestanding (accessed Dec. 18, 2012); *see also* The Free Dictionary, http://www.thefreedictionary.com/freestanding (defining "free standing" to mean "[s]tanding or operating independently of anything else" or "standing apart; not attached to or supported by another object") (Accessed Dec. 18, 2012.).

{¶ 15} Two additional considerations support a finding that Southtown's removal of the panels on its roof sign did not constitute removal of the sign and discontinuance of the non-conforming use. First, Miami Township's zoning resolution obligated Southtown to maintain its roof sign to prevent a public-safety hazard. *See* MTZR §4101.06(C)(3). During the BZA hearing, Southtown presented testimony that the old panels on its sign needed to be replaced because they were in "a hazardous state." This court has recognized that "it is unreasonable to construe [a zoning] ordinance * * * in such a manner that compliance with the maintenance requirement, by itself, will in time cause the owner of the sign to lose his right to its continued [non-conforming] use." *Bench Billboard Co. v. City of Dayton*, 2d Dist. Montgomery No. 13015, 1992 WL 80772 *11(Apr.10, 1992). Finally, we note that zoning restrictions are in derogation of the common law and should be strictly construed with any

ambiguities being resolved in favor of the property owner. *Allen v. Miami Cty. Bd. of Zoning Appeals*, 186 Ohio App.3d 196, 2010-Ohio-377, 927 N.E.2d 33, ¶17 (2d Dist.).

{¶ 16} For the foregoing reasons, we conclude that the trial court erred in its application of law to the undisputed facts. Contrary to the trial court's determination, Southtown's removal of the panels did not constitute removal of its roof sign. The non-freestanding support structure constituted part of the sign and remained in place. Therefore, the roof sign was not removed. The first assignment of error is sustained.

{¶ 17} In its second assignment of error, Southtown claims the trial court erred in finding that it was required to seek BZA approval to repair its roof sign by replacing the panels. Specifically, Southtown challenges the trial court's conclusion that "even if the [BZA] had found that the sign was not removed, * * * Appellants still failed to seek substitution of the nonconforming use before replacing the sign, as required under the Resolution."

{¶ 18} Southtown insists there was no need for it to apply for substitution of a non-conforming use because Miami Township's underlying premise—that the roof sign had been removed—was incorrect. In response, Miami Township reiterates its argument that the roof sign was removed. Miami Township claims the BZA and the trial court both correctly found that Southtown was required to seek substitution of a non-conforming use before removing the roof sign.

{¶ 19} Upon review, we find Southtown's argument to be persuasive. As noted above, a zoning inspector initially advised Southtown that removal of its sign's panels constituted removal of the sign and that the roof sign could not be replaced. The zoning inspector gave Southtown the option of seeking permission from the BZA for substitution of a

non-conforming use. Southtown filed the required application. After a hearing, the BZA denied it, reasoning only that "[t]he substitution requested is not a valid request due to the fact that the sign was removed prior to the application, and therefore is not a substitution[.]" This ruling was erroneous. Southtown's sign was not removed. Only the panels were removed. The largest part of the sign—the non-freestanding support structure—remained in place. Therefore, even assuming arguendo that Southtown's replacement of the panels required an application for substitution of a non-conforming use, the BZA's basis for denying the application was erroneous.

{¶ 20} But because Southtown was not removing and replacing its entire sign, we see nothing in the zoning resolution that required it to apply for substitution of a non-conforming use merely to replace the old panels with new ones of the same dimensions. At most, Southtown arguably *may* have needed a zoning permit or "certificate" pursuant to MTZR §4101.01(D), which provides:

> Face * * * changes of existing signs shall not require a zoning certificate, but must comply with the other provisions of this Resolution. The intent of this section is to allow changes in content without requiring a certificate when those changes do not result in an increase in sign area, height, location, or place the sign into a different functional sign category. The complete removal of a sign, such as a painted sign, or sign with no sign box expressly dedicated for holding the sign face, shall not constitute a face change and shall require a zoning certificate if it is replaced with a new sign.

{¶ 21} The application of MTZR §4101.01(D) is questionable. The provision allows

face changes of the same dimensions without a zoning certificate. It also provides, however, that the complete removal of a sign, including a sign with no box holding the sign face, does not constitute a face change. Here we cannot determine, based on the photographs in the record, whether Southtown's roof sign had a "sign box expressly dedicated for holding the sign face." In any event, based on our determination that Southtown's roof sign was not removed, it appears that no zoning certificate was required for the work it performed. We need not resolve that issue definitively, however, because neither party has briefed the applicability of MTZR §4101.01(D), which is beyond the scope of this appeal.

**{¶ 22}** Having found that Southtown's roof sign was not removed and that Southtown was not required to apply for substitution of a non-conforming use, we reverse the judgment of the Montgomery County Common Pleas Court and hold that Southtown is entitled to retain the legal non-conforming use status of its roof sign.[3]

. . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:

Timothy Jeffries
Robert J. Surdyk
Mary K. Huffman

---

[3]We make no finding here as to whether MTZR §4101.01(D) obligated Southtown to obtain a zoning certificate. As noted above, that issue has not been briefed. In any event, a failure to obtain a certificate to replace panels would not itself appear to destroy the legal non-conforming use status of Southtown's roof sign. *Pawuk v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 67883, 1995 WL 371318 *1 (June 22, 1995) (recognizing that "[t]he mere failure to obtain a permit * * * will not make a structure unlawful so as to preclude it from being a nonconforming use").